UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SGIC STRATEGIC GLOBAL INVESTMENT CAPITAL, INC., et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:14-CV-3300-B |
| BURGER KING EUROPE GMBH, | § § § | |
| Defendant. | § | |

**ORDER OVERRULING PLAINTIFFS' OBJECTIONS
AND ADOPTING THE FINDINGS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiffs' Objections to the United States Magistrate Judge's Findings, Conclusions, and Recommendation on Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery. Doc. 37. As set forth below, Plaintiffs' objections are **OVERRULED** in their entirety.

**I.**

**BACKGROUND**

A.  *Factual Background*[1]

Plaintiffs SGIC Strategic Global Investment Capital, Inc. ("SGIC") and GRIL German Restaurant Investment & Lending, Inc. ("GRIL") are Delaware corporations with their principal place of business in Dallas, Texas. Doc. 1, Compl. 1. Plaintiff SGIC is the sole shareholder of Plaintiff

---

[1] The Court incorporates in large part the factual background presented by the Magistrate Judge in his Findings, Conclusions, and Recommendation on Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery, as the summary of Plaintiffs' contentions, based on the facts alleged in their Complaint, is not the basis for Plaintiffs' Objections to the Magistrate Judge's Findings, Conclusions, and Recommendation.

GRIL. *Id.* Plaintiff Christian Groenke, a United States citizen and a resident of Texas, is the sole shareholder and president of SGIC. *Id.* Defendant Burger King Europe GmbH ("BKE"), a Swiss corporation with its principal place of business in Zug, Switzerland, is a franchisor of Burger King restaurants in Germany and other European countries. *Id.* at 2; doc. 11, Def.'s Mot. to Dismiss 2.

Plaintiff Groenke owns and operates Burger King franchises in Germany through various corporate entities under franchise agreements with Defendant. *See* Compl. 4–5. The franchise agreements required the franchisees to pay certain franchise fees to BKE. *Id.* at 4. Originally, the franchise fee payments for some of the franchises were backed by a letter of credit with a German bank, but Plaintiff Groenke later substituted his personal guarantee for the letter of credit. *Id.* at 4–5.

According to Plaintiffs, in 2010, Defendant induced Plaintiff Groenke to purchase shares of a corporation that owned nonperforming Burger King restaurants in Berlin in exchange for a development agreement and the opportunity to purchase 91 Burger King restaurants in Germany. *Id.* at 4–6. Plaintiffs allege that in 2013, Defendant terminated the development agreement, sold the 91 restaurants without giving Plaintiffs an opportunity to purchase them, and engaged in a course of conduct designed to devalue Plaintiff Groenke's performing restaurants. *Id.* at 6–8. After the nonperforming restaurants were put into bankruptcy, Plaintiff Groenke tried to sell Plaintiff SGIC's interest in Plaintiff GRIL. *Id.* at 7–8. Plaintiffs assert that they had formed a Share Purchase Agreement with a potential buyer—or alternatively, that they were in the process of entering into such an agreement—but that Defendant threatened the buyer and stopped the sale. *Id.* at 10–15.

There are two relevant lawsuits in the Northern District of Texas that involve the underlying parties. On April 17, 2014, Defendant BKE, as a plaintiff, filed an action for franchise fees against Groenke, as a defendant, based on Groenke's personal guarantee. *See Burger King Europe GmbH v.*

*Groenke*, 3:14-CV-1417-G-BN (N.D. Tex. filed Apr. 17, 2014) (the "Guarantee Lawsuit"). Subsequently, on September 12, 2014, Plaintiffs SGIC, GRIL, and Groenke filed this separate lawsuit against Defendant BKE, alleging tortious interference with the Share Purchase Agreement ("SPA") related to SGIC's attempt to sell its interest in GRIL to a third party. Compl. 10–15.

B.   *Procedural Background*

Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* (doc. 11) on January 5, 2015. On January 22, 2015, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery (doc. 19) so as to address the issues raised in Defendant's Motion to Dismiss. The Court referred Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery to United States Magistrate Judge David L. Horan (the "Magistrate Judge") for hearing, if necessary, and recommendation or determination. Doc. 22. On May 4, 2015, the Magistrate Judge entered his Findings, Conclusions, and Recommendation ("Findings and Recommendation"), in which he concluded that Plaintiffs failed to make a preliminary showing of either specific or general jurisdiction over Defendant and that they further failed to show that jurisdictional discovery is needed in this case. *See* doc. 36, Findings, Conclusions, and Recommendation ("F&R"). Consequently, the Magistrate Judge recommended that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery be denied. *Id.* at 9.

On May 18, 2015, Plaintiffs filed their Objections to the Magistrate Judge's Findings, Conclusions, and Recommendation. Doc. 37. Defendant submitted its Response to the Objections (doc. 40) on June 3, 2015, and Plaintiffs filed their Reply (doc. 41) on June 17, 2015. The matter is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Rule 72(b) of the Federal Rules of Civil Procedure provides that within fourteen days after being served a copy of the magistrate judge's recommendation, a party may file specific written objections. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). "The district must then 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made' before accepting, rejecting, or modifying those findings or recommendations." *Habets v. Waste Mgmt., Inc.*, 363 F.3d 378, 381 (5th Cir. 2004) (quoting 28 U.S.C. § 636(b)(1)).[2]

## III.

## ANALYSIS

In his Findings and Recommendation, the Magistrate Judge recommended that Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery (doc. 19) be denied based on his conclusion (1) that Plaintiffs failed to make a preliminary showing of either specific or general jurisdiction over Defendant and (2) that Plaintiffs further failed to show that jurisdictional discovery is needed in this case. *See* F&R 4–9. In reaching his conclusions, the Magistrate Judge summarized the applicable law—which the Court now adopts for the purpose of reviewing Plaintiffs' objections—as follows:

---

[2] The parties disagree over the applicable standard guiding the Court's review of the Magistrate Judge's Findings and Recommendation. *See* docs. 40, Resp. 4–5; 41, Reply 2. Because the Magistrate Judge viewed this determination as dispositive and intended that any objection be governed by Rule 72(b), requiring the district court to make a de novo determination, rather than by Rule 72(a), which provides for a "clearly erroneous or contrary to law" standard, the Court applies the standard set forth in Rule 72(b). *See* F&R 10. After applying the de novo standard, the Court ultimately overrules Plaintiffs' objections. The Court notes that the same result would be reached if the more deferential "clearly erroneous or contrary to law" standard were applied.

> When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* at 428. "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 955 (5th Cir. 2000) (citations omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending, LLC*, No. 4:11-CV-429-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly*, 213 F.3d at 855). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.* [. . .]

*Id.* at 3–4.

Plaintiffs raise two objections to the Findings and Recommendation. First, they object to the Magistrate Judge's conclusion that Plaintiffs failed to make a preliminary showing of specific jurisdiction over Defendant. Doc. 37, Objections 3. Second, they object to the conclusion that they failed to show their entitlement to jurisdictional discovery. *Id.* The Court considers the parties' respective arguments as to these objections, in turn, below.

A.   *Specific Jurisdiction*

Plaintiffs object to the Magistrate Judge's conclusion that they failed to make a preliminary showing of specific jurisdiction over Defendant. Objections 3. Plaintiffs' basis for asserting that they have made such a preliminary showing is their claim that Defendant purposefully availed itself of the Court's jurisdiction by filing the Guarantee Lawsuit.

As the Magistrate Judge correctly indicated when considering this matter, "[v]oluntarily filing

a lawsuit may constitute purposeful availment and subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." F&R 4 (citing *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F. Supp. 2d 654, 667–68 (N.D. Tex. 2002)).

In addressing Plaintiffs' argument that Defendant purposefully availed itself of the Court's jurisdiction by filing the Guarantee Lawsuit, the Magistrate Judge concluded that Defendant's filing of the Guarantee Lawsuit does not constitute purposeful availment and is insufficient to subject it to personal jurisdiction, because the two lawsuits do not arise from the same general transaction. *Id.* The Magistrate Judge determined that Plaintiffs failed to show that the two lawsuits were related, noting that "the Guarantee Lawsuit follows Plaintiffs' attempts to increase their ownership interests in Defendant's restaurants while the underlying suit follows Plaintiffs' attempt to sell their interests in Defendant's restaurants." *Id.* at 5. He further stated that Plaintiffs in the present case "are suing because Defendant allegedly interfered with their attempt to sell their interest in certain restaurants to a third party," which is unrelated to Defendant BKE's pursuit of franchise fees from Plaintiff Groenke—the basis of the Guarantee Lawsuit. *Id.* In addition, the Magistrate Judge observed that "the restaurants at issue in the Guarantee Lawsuit and the restaurants involved in the SPA [underlying the present lawsuit] do not overlap, and two of the three Plaintiffs—SGIC and GRIL—are not parties in the Guarantee Lawsuit." *Id.*

In their Objections to these conclusions, Plaintiffs reiterate that the Guarantee Lawsuit and the present lawsuit arise from the "same general transaction" and proceed to recount the details of the parties' dealings. Objections 4–13. In sum, Plaintiffs aver that there is a causal connection between the two lawsuits. *Id.* at 12. They indicate that "Defendant induced [Plaintiff] Groenke's

company to purchase underperforming Burger King Restaurants in the Berlin area by promising to deliver more profitable restaurants across Germany later. After unloading its problems on [Plaintiff] Groenke's companies . . . , Defendant failed to follow through with its commitments." *Id.* at 5. Plaintiffs explain that Groenke "would not have personally guaranteed franchisee fees owed by underperforming restaurants if he had known that the promises and representations made by [Defendant] BKE representatives would not be fulfilled." *Id.* at 6. Plaintiffs then admit that "[i]t is the obligations under the guarantee agreement for the [Burger King] Berlin restaurants that form[] the basis for the Guarantee Action." *Id.* at 6–7.

This, however, is not the transaction that forms the basis of the present lawsuit. As Defendant indicates (and as Plaintiffs do not dispute), the present action is not based on Defendant's alleged breach of its promises regarding Plaintiffs' purchase and guarantee agreements related to the Burger King restaurants mentioned above. Doc. 40, Resp. 6. Instead, the present lawsuit is based on Defendant's alleged tortious interference with the sale of Plaintiff GRIL to a third party. *Id.*; Objections 11. Plaintiffs' detailed description of the events leading up to the respective lawsuits does not alter the fact that each lawsuit is based on distinct and separate transactions.

Accordingly, the Court **OVERRULES** Plaintiffs' objection to the Magistrate Judge's conclusion that the Guarantee Lawsuit and the present lawsuit do not arise from the same general transaction and therefore cannot be used to show that Defendant purposeful availed itself of this Court's jurisdiction by filing the Guarantee Lawsuit.

B.  *The Need for Jurisdictional Discovery*

Plaintiffs next object to the Magistrate Judge's conclusion that they failed to show that jurisdictional discovery is needed in the present case. Objections 13.

The Magistrate Judge correctly explained that "jurisdictional discovery need not be permitted unless the motion to dismiss raises issues of fact." F&R 8 (citing *Kelly*, 213 F.3d at 855). In evaluating Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery, he noted that Plaintiffs do not dispute any facts asserted by Defendant in its Motion to Dismiss, but that they instead dispute "the significance of facts for determining jurisdiction." *Id.* He acknowledged Plaintiffs' argument that Defendant knew Plaintiffs were in Texas when it communicated with them, but he explained that "Defendant does not deny that Plaintiffs operate in Texas and does not take a position on Plaintiffs' location when they received Defendant's communications." *Id.* Based on the foregoing, the Magistrate Judge concluded that "Plaintiffs have shown no disputed issue of fact that requires jurisdictional discovery." *Id.* He noted that "it appears the Court will accept Plaintiffs' allegations in its pleading as true and construe all factual conflicts in favor of Plaintiff[s]," thus further emphasizing that Plaintiffs have failed to point to factual disputes requiring jurisdictional discovery. *Id.* at 8–9. Additionally, to the extent Plaintiffs asserted that a factual dispute exists as to Defendant's business presence in Texas, the Magistrate Judge determined that "Plaintiffs have not sufficiently identified any facts that they expect to obtain through discovery and how that information would support personal jurisdiction." *Id.* at 9. Thus, this aspect of Plaintiffs' motion appeared to be no more than a "fishing expedition" into jurisdictional facts, which a court need not allow. *Id.* (citing *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 797–98 (N.D. Tex. 2010)).

It is unclear what specific objections Plaintiffs raise to these conclusions; rather than pointing to errors in the Magistrate Judge's review of their Motion, Plaintiffs merely reiterate arguments to show the need for jurisdictional discovery based on Defendant's allegedly incorrect statement that all of its communications occurred in Switzerland or Germany. Objections 13–14. They further argue

that there are contradictory statements regarding the location of Defendant's business operations. *Id.* at 14.

After reviewing Plaintiffs' objections, the Court concludes that they fail to identify issues of fact in Defendant's Motion to Dismiss whose resolution would be relevant to the question of personal jurisdiction. Plaintiffs contend that there are disputes regarding the location of Defendant's business operations, but as Defendant indicates in its Response, Plaintiffs do not allege that Defendant had a presence in Texas. Resp. 8. Thus, Plaintiffs' objections offer speculations without indicating what facts Plaintiffs expect to obtain and how such facts would support personal jurisdiction over Defendant in Texas. *See Freeman v. U.S.*, 556 F.3d 326, 342 (5th Cir. 2009). Accordingly, the Court **OVERRULES** Plaintiffs' second objection, as it fails to show that jurisdictional discovery is necessary.

### IV.

### CONCLUSION

For the reasons stated above, the Court **OVERRULES** Plaintiffs' Objections (doc. 37) in their entirety and **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge (doc. 36) regarding Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery.

**SO ORDERED.**

**SIGNED: July 9, 2015**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE